# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

KEVIN D. HANNER,

      Petitioner,

v.                                      Case No. 8:14-cv-2337-T-33EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Kevin D. Hanner, a prisoner in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Hanner also filed a memorandum of law in support of his petition (Doc. 2). He challenges his conviction entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida, in 2010. Respondent filed a response (Doc. 10), in which it concedes that Hanner's petition is timely. Hanner filed a reply (Doc. 16). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

Hanner was charged with one count of attempted carjacking. (Doc. 11, Ex. A1.) He entered a negotiated plea of guilty, and was sentenced to a minimum mandatory term of fifteen years in prison as a prison releasee reoffender. (Doc. 11, Exs. A2, A4.) Hanner filed a motion to withdraw his plea under Florida Rule of Criminal Procedure 3.170(*l*). (Doc. 11, Ex. A5.) After the state court conducted an evidentiary hearing, it entered an order

denying the motion.  (Doc. 11, Exs. A6, A9.)  The state appellate court *per curiam* affirmed Hanner's conviction and sentence.  (Doc. 11, Ex. B4.)

Hanner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 11, Ex. C1.)  The state court entered an order striking several of his claims with leave to amend.  (Doc. 11, Ex. C2.)  After Hanner filed an amended motion, the state court entered an order that denied or dismissed several of Hanner's claims and directed the State to respond to the remaining claims.  (Doc. 11, Exs. C3, C4.)  Upon receiving the State's response, the state court entered a final order denying in part and dismissing in part Hanner's postconviction motion.  (Doc. 11, Ex. C6.)  The state appellate court *per curiam* affirmed the order.  (Doc. 11, Ex. C7.)  Hanner's motion for rehearing was denied.  (Doc. 11, Exs. C8, C9.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court. Under
> § 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied–the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to" clause, a
> federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if
> the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state court identifies
> the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable . . . an unreasonable application is different from

an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown*

*v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness *per se*, of the state court decision that [the federal court is] to decide.").  The

phrase "clearly established Federal law" encompasses only the holdings of the United

States Supreme Court "as of the time of the relevant state-court decision."  *Williams*, 529

U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, _ U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In *per curiam* decisions without written opinions, the state appellate court affirmed Hanner's conviction and sentence, as well as the rejection of his postconviction motion. The state appellate court's *per curiam* decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398.  Hanner bears the burden of overcoming by clear and

convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

### EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal

claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152, 170 (1982).  The

petitioner must show at least a reasonable probability of a different outcome.  *Henderson*,

353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).  A petitioner

may also obtain federal habeas review of a procedurally defaulted claim if review is

necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S.

446, 451 (2000); *Carrier*, 477 U.S. at 495-96.  A fundamental miscarriage of justice occurs

in an extraordinary case where a constitutional violation has probably resulted in the

conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995);

*Henderson*, 353 F.3d at 892.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Hanner asserts ineffective assistance of counsel, a difficult claim to sustain.  "[T]he

cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511

(11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims.    According to
> *Strickland*, first, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  In order to show deficient

performance, a petitioner must demonstrate that "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Hanner must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  A petitioner cannot meet his burden merely by showing that counsel's choices

were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground One**

**A.**

Hanner alleges federal substantive and procedural due process violations, and asserts that his plea was involuntary.  In alleging a substantive due process violation, Hanner asserts that he was convicted while incompetent.  In support, Hanner asserts that he has a history of mental health disorders and has been prescribed psychotropic, anti-depressant, and other medications.  Hanner also states that he has been committed to mental health treatment facilities approximately seventeen times.  He alleges that at the time of the plea, he was not receiving medication that enables him to comprehend "what is going on around him."  (Doc. 1, p. 6.)  Hanner states that without this medication, he "becomes extremely paranoid, depressed, he hears voices, and has hallucinations."  (Doc. 1, p. 6.)  Hanner argues that, as a result, his plea was involuntary.

Although Hanner did not expressly bring a substantive due process claim in state court, his claim is not considered procedurally defaulted.  *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1258-59 (11th Cir. 2002) ("The district court's ruling that Wright had procedurally defaulted his substantive due process mental competency claim is contrary to the law of this circuit that such claims generally cannot be defaulted.").  Additionally, when Hanner claimed in ground three of his postconviction motion that his plea was involuntary due to incompetence, the state court considered the underlying question of Hanner's competency.[1]

---

[1] In his motion to withdraw plea, Hanner asserted that his plea was involuntary and thus resulted in a federal constitutional violation, but did not specifically allege incompetence to proceed.  (Doc. 11, Ex. A5.) Nor did he expressly raise a competency claim in his written closing arguments submitted after the evidentiary hearing on his motion.  (Doc. 11, Ex. A8.)

The conviction of a mentally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375 (1966).  The federal standard for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).[2]  *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").  The standard governing competency to enter a valid guilty plea is the same as that for competency to stand trial.  *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993).  "[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992).

The state court rejected ground three of Hanner's postconviction motion, in which he claimed that his plea was involuntary due to incompetence:

> A claim that a defendant was not competent to enter a plea goes to the voluntary nature of the plea, which is a cognizable issue in a motion under Rule 3.850.  See Florida Rule of Criminal Procedure 3.850(a)(5).
> . . .
> A defendant is competent to proceed if he has the "sufficient present ability to consult with counsel with a reasonable degree of rational understanding and . . . a rational, as well as factual, understanding of the pending proceedings." Arseneau [v. State], 77 So. 3d [1280 ,] 1282 [(Fla. 2d DCA 2012)], quoting Florida Rule of Criminal Procedure 3.211(a)(1).  In making this determination, the court must consider "the defendant's

---

[2] Florida courts utilize the same standard.  § 916.12(1), Fla. Stat.; Fla. R. Crim. P. 3.211(a)(1).

capacities to (1) appreciate the charges or allegations against the defendant; (2) appreciate the range and nature of possible penalties; (3) understand the adversary nature of the legal process; (4) disclose to counsel facts pertinent to the proceedings at issue; (5) manifest appropriate courtroom behavior; and (6) testify relevantly.  Id., quoting Florida Rule of Criminal Procedure 3.211(a)(2)(A).

The State cites to the fact that Defendant gave appropriate answers to the Court during the plea colloquy and answered questions regarding his last date of release from confinement as indicators of his competency. These indicators, in combination with the fact that the defendant stated that he read the change of plea form before signing it, relate to factors (1), (2), (3), and (5) as set forth above.

Further, it is apparent from Defendant's testimony during the hearing held on April 15, 2011 pursuant to his Motion to Withdraw Plea, filed on October 8, 2010, that he had detailed discussions with counsel regarding the case, even suggesting a possible defense.  Defendant gave a detailed account of the occurrences at the change of plea hearing, stating that the did not want to take a plea at first, that counsel left him "in the back," then "came back to [Defendant] and said that he had just spoke with [Defendant's] father and that [his] father suggested [he] should take [the] 15 years."  Further, Defendant stated that counsel told him that if he accepted a plea offer for 15 years in prison that "he could probably get [him] a furlough to seek mental health treatment and medical treatment."  These are very specific recollections.  The Court finds that there is no reasonable probability that an individual who claims that he "did not know what was going on" during the change of plea hearing could recall these occurrences so clearly and specifically.

From Defendant's testimony at the hearing on his Motion to Withdraw Plea, the Court finds that Defendant manifested the relevant capacities under factors (1), (2), and (4) of Florida Rule of Criminal Procedure 3.211(a)(2)(A). The Court did not have the opportunity to assess Defendant's ability, under factor (6), to testify relevantly, at the time he entered his plea.  However, given that the Court is able to determine that Defendant demonstrated the required capacities under factors (1)-(5) from reviewing the transcripts of the Change of Plea and Motion to Withdraw Plea hearings, the Court finds that the record contains adequate evidence to refute the allegation that Defendant was incompetent to proceed at the time he entered his plea.

Though Defendant's claim may be refuted from the record considering only the fact that he demonstrated most of the capacities indicating competency to proceed set forth in Rule 3.211(a)(2)(A), the Court will additionally address the remaining arguments the State raises in its response.  The State further asserts that, on October 7, 2012 [sic], only seven days after entering the plea, Defendant filed the above-mentioned *pro se* Motion to Withdraw Plea.  The State claims that, in order to have articulated the several claims he raised in this motion, Defendant must have

been able to understand what had occurred during the plea hearing.  In the motion, Defendant claimed he was coerced by counsel, that he was not informed of the mandatory minimum sentence that would be imposed as a result of designation as a PRR, that he was not advised of the elements of the crime of which he was accused, that he was promised a furlough, and that he was not advised regarding the consequences his plea would have on a pending misdemeanor charge.  The Court agrees that the proximity of the date this motion was filed to the date on which Defendant entered his plea as well as the detailed nature of the motion refute the claim that Defendant "did not know what was going on" when he entered his plea.  The State also notes in its response, and the Court observes, that the motion contained no mention of competency issues.

The State also contends that the testimony of Defendant's trial counsel, Brian Pingor, at the hearing on the Motion to Withdraw Plea, indicates that Defendant was competent at the time he entered his plea.  Mr. Pingor stated during that hearing that he never suspected competency to be an issue, "not even the slightest."  The Court finds that this, in addition to the record evidence that is discussed above, indicates that Defendant was competent to proceed at the time he entered his plea.

The Court finds that Defendant's claim that his plea was involuntary due to competency issues is refuted by the record based upon the following observations, which are discussed in more detail above: (1) the fact that Defendant's testimony during the Change of Plea and Motion to Withdraw Plea Hearings indicated Defendant possessed the capacities indicating competency to proceed under five of the six enumerated factors set forth in Florida Rule of Criminal Procedure 3.211(a)(2)(A); (2) the fact that Defendant was able to specifically recall what occurred on the day he entered his plea at the Motion to Withdraw Plea hearing; (3) the fact that Defendant was able to articulate his grounds for moving to withdraw his plea so clearly just seven days after entering the plea, with no mention of competency issues, in his Motion to Withdraw Plea; and (4) the fact that Defendant's trial counsel never observed any issues with competency.  These observations conclusively refute Defendant's claim that his plea was involuntary due to lack of competency to proceed.  Therefore, Ground Three of Defendant's motion is denied.

(Doc. 11, Ex. C6, pp. 265-68) (court's record citations omitted).

As the postconviction court determined, the change of plea hearing transcript reflects that Hanner provided appropriate answers to the court's questions.  Additionally, Hanner gave no indication that he did not know what was happening or did not understand the proceedings.  The transcript reflects the following colloquy between the court and

Hanner:

| | |
|---|---|
| THE COURT: | All right.  Mr. Hanner, did I swear you in previously this morning? |
| [HANNER]: | No, sir, you have not. |
| THE COURT: | All right.  Go ahead and raise your right hand. |

(The defendant was duly sworn by the Court.)

| | |
|---|---|
| THE COURT: | Go ahead and put your hand down.  State your full name and your date of birth. |
| [HANNER]: | Kevin Dale Hanner, October 29th, 1979. |
| THE COURT: | All right.  Do you understand first that by entering your plea of guilty it means at this moment you are giving up your presumption of innocence? |
| [HANNER]: | Yes, sir. |
| THE COURT: | The matter is on the trial docket next week.  By entering a plea of guilty that means we won't be going to trial on it. Do you understand that? |
| [HANNER]: | Yes, sir. |
| THE COURT: | So, associated with not going to trial, it means that Mr. Pingor will no longer be questioning the prosecutor's witnesses.  Do you understand that? |
| [HANNER]: | Yes, sir. |
| THE COURT: | He won't be calling in defense witnesses nor would he be asserting defenses, if any exist.  Do you understand that? |
| [HANNER]: | Yes, sir. |
| THE COURT: | Do you further understand that not only are you giving up that presumption of innocence but you're indicating that the prosecutor won't be required to prove your guilt to a jury of six citizens beyond a reasonable doubt because you're admitting your guilt this morning.  Do |

|                | you understand that? |
|----------------|----------------------|
| [HANNER]:      | Yes, sir. |
| THE COURT:     | And finally, you won't be testifying at a jury trial or remaining silent at a jury trial because there won't be a jury trial.  Do you understand that? |
| [HANNER]:      | Yes, sir. |
| THE COURT:     | All right.  Is anyone threatening or forcing you to enter the plea? |
| [HANNER]:      | No, sir. |
| THE COURT:     | You've been represented by Mr. Pingor.   Are you satisfied with his advice and his counsel? |
| [HANNER]:      | Yes, sir. |
| THE COURT:     | Have you had an opportunity to review the plea form? |
| [HANNER]:      | Yes, sir. |
| THE COURT:     | How far in school have you gone? |
| [HANNER]:      | College. |
| THE COURT:     | Obviously, you read.  When you read the plea form over did you note that it contains your rights? |
| [HANNER]:      | Yes, sir. |
| THE COURT:     | As well as a waiver of those rights? |
| [HANNER]:      | Correct, sir. |
| THE COURT:     | All right.  You can go ahead and sign the plea form. |

(Doc.11, Ex. A3, pp. 102-04)

During the proceeding, Hanner was informed of the maximum sentence he faced, and indicated to the court that he understood his qualification as a prison releasee

reoffender and habitual felony offender:

> THE COURT:    This needs to be tried.  This is an '09 case.  And 19 prior felonies, if a jury says guilty - - you know that it only takes two to get enhanced up to 30.  You've got 19 and you also have that PRR status.  If they convict you as charged, it would require a 15-year day-for-day sentence.

> [HANNER]:    Yes, sir.  I understand that.

(Id., pp. 99-100.)

> THE COURT:    State of Florida versus Kevin Hanner. . . . The notice - - well, actually there are two of them.  One alleges that he is a habitual offender.  The other notice is that he qualifies as prison releasee reoffender.  We sometimes just call it PRR, and all that means is this incident occurred within three years of your release from a prison.

> [HANNER]:    Yes, sir.

> THE COURT:    [ ] So the attempted carjacking would carry 30 years as a habitual offender and 15 years as a PRR.

(Id., pp. 101-02.)

> THE COURT:    So, I note that there were two notices: one you're a PRR, prison releasee reoffender, and one that you're habitual offender.

> [HANNER]:    Yes, sir.

(Id., pp. 105-06.)   Similarly, Hanner answered, "No, sir" when the court asked whether he contested the date on which he was alleged to have been released from prison.  (Id., p. 109.)  And Hanner spoke in support of trial counsel Brian Pingor's request that Hanner be granted a furlough, telling the court that he had bonded out on another misdemeanor case. (Id., p. 106.)  Accordingly, the change of plea hearing transcript reflects that Hanner was aware of and participated in the proceedings.

As the state court further noted, Hanner's motion to withdraw plea contains coherent arguments concerning events occurring at or close to his change of plea.  Hanner argued that he was coerced or tricked into entering the plea; that counsel failed to advise him he would receive a mandatory minimum sentence as part of his plea bargain; that he was not informed of the elements of the crime that must be proven against him; and that counsel told him if he changed his plea he would be allowed a furlough to have surgery and get his personal affairs in order.  (Doc. 11, Ex. A5.)  Yet, this motion did not raise any allegation that Hanner was incompetent, did not understand the proceedings, or was not receiving necessary medication at the time.  (Id.)

Additionally, as the state court addressed, Hanner's testimony at the evidentiary hearing on his motion to withdraw plea reflects a clear memory of the events of September 30, 2010, the day he changed his plea.  Hanner testified in some detail about Pingor's comments that Pingor had discussed the potential plea deal with Hanner's father, who suggested he enter the plea for fifteen years.  (Doc. 11, Ex. A6, p. 222.)  Hanner testified that he told Pingor that day he did not want to plead.  (Id., pp. 221-22.)  Hanner further stated that Pingor indicated Hanner could obtain a furlough if he entered the plea.  (Id., pp. 222, 224, 262.)  Hanner also specifically recalled that on the day of the plea, Pingor spoke to him two or three times, for a total of about fifteen minutes.  (Id., p. 229.)  Hanner claimed that Pingor stated that he was not prepared and he was not going to present a defense because he did not believe Hanner's statement.  (Id., pp. 235-36).  He also had a distinct recollection that, after the plea was accepted, Pingor covered the microphone and told him that his sentence was day-for-day and he would not receive gain time.  (Id., pp. 232-34, 238-39.)  Hanner reiterated that on that day, he was surprised that he received a day-for-

day sentence and that he did not receive a furlough.  (Id., p. 264.)  Hanner's specific recollections of the day he changed his plea support the conclusion that Hanner was competent to enter the plea.

Furthermore, Hanner's allegation of a history of mental health issues does not establish incompetency.  A history of mental instability does not demonstrate incompetency without a specific showing of how such issues generated a substantial doubt of a petitioner's competency at the time.  *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quoting *Card v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)). Furthermore, a defendant's use of psychiatric drugs is relevant but not determinative to establishing incompetency.  *Sheley v. Singletary*, 955 F.2d 1434 (11th Cir. 1992).  Hanner presents no evidence to establish that his lack of medication rendered him incompetent.

Hanner fails to establish that he was incompetent to enter the plea under the *Dusky* standard.  As Hanner does not demonstrate that he entered his plea while mentally incompetent, he cannot establish a substantive due process violation.[3]

Moreover, the record reflects that the plea was voluntary.  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North*

---

[3] In his reply, Hanner requests an evidentiary hearing on his substantive due process claim.  "[I]n order to be entitled to an evidentiary hearing on a substantive competency claim, . . . a petitioner must present 'clear and convincing evidence' that creates a 'real, substantial, and legitimate doubt' as to his competence." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012) (quoting *James v. Singletary*, 957 F.2d 1562, 1573 (11th Cir. 1992)).  As Hanner has failed to meet this burden, an evidentiary hearing is not warranted.

*Carolina v. Alford*, 400 U.S. 25, 31 (1970). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [and] his lawyer [at a plea hearing] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).   "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Before entering the negotiated plea, Hanner was informed of the maximum sentence he faced upon conviction at trial.  (Doc. 11, Ex. A3, p. 102.)[4]  In addition, Hanner was aware of the agreed-upon sentence of fifteen years as a PRR.  (Id., p. 102.)  During the plea colloquy, Hanner indicated that he understood the rights that he was giving up by entering the plea.  (Id., pp. 103-04.)  He also told the court that he read the plea form and understood it contained a waiver of his rights.  (Id., p. 104.)  Hanner further stated that he

---

[4] The state court later rejected Hanner's claim, presented in his motion to withdraw plea, that he did not understand the terms of his sentence.  (Doc. 11, Ex. A9.)  Additionally, as addressed in Ground Two, the state court also rejected Hanner's assertion that his plea was involuntary because he did not understand the charge against him.

was not threatened or coerced into entering the plea, and that he was satisfied with the advice of his attorney.  (Id.)  Hanner does not show that any of his statements were false. In addition, the state court accepted his plea, finding it to be freely and voluntarily entered. (Id., p. 105.)  Hanner fails to establish a basis to determine that his plea was involuntarily entered, and as addressed, he makes no showing of incompetency.  The state court's rejection of his postconviction claim of involuntary plea due to incompetency was not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

**B.**

In asserting a procedural due process violation, Hanner contends that the state court did not provide him a competency evaluation or ask him during the plea colloquy whether he had any mental health issues or was on any type of medication that could interfere with his understanding of the plea.  He asserts that the court's failures resulted in his entering an unknowing and involuntary plea. To establish a procedural due process violation due to the court's "failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency." *Wright*, 278 F.3d at 1256 (citing *Drope*, 420 U.S. at 180; *Pate*, 383 U.S. at 385).

On direct appeal, Hanner raised a federal due process violation based on the trial court's alleged failure to inquire into his mental status or competency.  (Doc. 11, Ex. B2, pp. 13-14.) The state appellate court rejected this claim when it *per curiam* affirmed his judgment and sentence.

Hanner fails to show entitlement to relief.  For the same reasons discussed above,

the state court record simply does not reveal objective facts known to the trial court that would raise a bona fide doubt regarding Hanner's competency.[5]  Hanner's interactions with the court during the change of plea proceedings reflect that he was aware of what was taking place.  There is no indication that any matter concerning Hanner's mental health was raised in the trial court prior to the entry of the plea.  While the trial court's colloquy did not address whether Hanner was on medication or had mental health issues,[6] Hanner does not demonstrate that this omission resulted in a federal procedural due process violation.  He does not show information before the court that would cause it to doubt or question his competence.   Moreover, as addressed, the court ensured the plea was voluntary by confirming that Hanner understood the rights he waived and had not been forced to change his plea, and by informing him of the maximum possible term he faced upon conviction at trial.  *See Stano*, 921 F.2d at 1141.

Hanner fails to establish a procedural due process violation on the bases alleged.  Accordingly, he cannot show that his plea was involuntary as a result of the trial court's actions.  The state court's rejection of Hanner's procedural due process claim was not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.  Hanner is not entitled to relief on

---

[5] Hanner attaches to his reply an order of probation filed in one of his previous cases.  He believes it demonstrates that the State and trial court knew he had mental health problems.  The order was signed on May 5, 2000.  Special condition 27 of Hanner's probation provides: "You will enter & complete Operation PAR drug residential treatment program.  (18 months)."  (Doc. 16, p. 30.)  Hanner claims this is a "dual mental health/substance abuse program."  (Doc. 16, p. 2.)  This order of probation, entered more than ten years before the relevant proceedings, cannot be said to have put before the trial court any information raising a bona fide doubt as to Hanner's competency to enter the plea.

[6] In support of his claim, Hanner cites Florida Rule of Criminal Procedure 3.172.  That Rule lists points of inquiry a court should make before accepting a plea to ensure that the plea is voluntary.  Fla. R. Crim. P. 3.172(c).  It does not require the court to inquire into the defendant's mental status or medication.  *Id.*

Ground One.

**Ground Two**

Hanner asserts that his conviction violates the Fourteenth Amendment because the elements of attempted carjacking were not proven beyond a reasonable doubt.  He claims that the evidence only established attempted robbery.  Hanner further asserts that his plea was involuntary due to trial counsel's failure to investigate the elements of attempted carjacking and misadvice to enter a plea to an offense that did not occur.

The facts presented by the State at the change of plea hearing reflect the following.  Hanner approached the victim at a Publix grocery store in St. Petersburg as she was getting out of her car.  He held an object against the victim's side and demanded her keys and money.  The victim saw that the object was a cell phone.  The victim, who had a concealed weapons permit, was able to retrieve her weapon from within the car. She pointed it at Hanner, who dropped the cell phone, screamed, and ran.  A witness saw Hanner go beneath a dumpster, where he was later located wearing clothes that matched the victim's description.  In addition, the victim identified Hanner and his fingerprint was found on the cell phone that he dropped near the victim's car.  (Doc. 11, Ex. A3, pp. 97-98, 105.)

The crime of robbery occurs when an individual (1) takes money or other property that may be the subject of larceny from the person or custody of another; (2) with the intent to either permanently or temporarily deprive the person or owner of the money or property; (3) and in the course of the taking there is the use of force, violence, assault, or putting in fear. § 812.13, Fla. Stat.  The crime of carjacking involves the same elements but specifies

that the property must be a motor vehicle.   § 812.133(1), Fla. Stat.[7]  Criminal attempt

occurs when a person does any act toward the commission of an offense, but fails or is

intercepted or prevented in the execution of the offense.  § 777.04(1), Fla. Stat.

## A.

Hanner claims that, because there is no evidence he attempted to take the victim's

motor vehicle, as opposed to some other property such as her keys or money, the

elements of attempted carjacking were not established.  Thus, he argues, his conviction

violates the Fourteenth Amendment because he was convicted of a crime whose elements

were not proven beyond a reasonable doubt.  In support, he cites *Jackson v. Virginia*, 443

U.S. 307, 324 (1979), which holds that a petitioner "is entitled to habeas corpus relief if it

is found that upon the record evidence adduced at the trial no rational trier of fact could

have found proof of guilt beyond a reasonable doubt."

An independent claim challenging the sufficiency of the evidence is unexhausted

because Hanner did not raise the claim on direct appeal.  (Doc. 11, Ex. B2.)  He cannot

return to state court to file a successive, untimely direct appeal. *See* Fla. R. App. P. 9.140.

Accordingly, the claim is procedurally defaulted.  *Smith*, 256 F.3d at 1138.  Hanner does

not establish the applicability of either the cause and prejudice or fundamental miscarriage

of justice exception.  *Id.*

---

[7] The Florida Supreme Court has further explained:

The carjacking statute is a very specific subset of the more general robbery statute.  When the Legislature enacted the carjacking statute, it carved out a particular type of robbery-the forceful taking of a motor vehicle-and made it an enhanced crime (unarmed robbery is a second-degree felony compared to unarmed carjacking which is a first-degree felony).

*Cruller v. State*, 808 So.2d 201, 204 (Fla. 2002).

Notwithstanding the procedural default, Hanner cannot obtain relief.  A guilty plea admits the elements of the offense.  *United States v. Brown*, 752 F.3d 1344 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986)).  *See also United States v. Saac*, 632 F.3d 1203, 1209 (11th Cir. 2011) ("[A] guilty plea serves as an admission of all of the elements of a formal criminal charge.") (quoting *United States v. Skinner*, 25 F.3d 1314, 1316-17 (6th Cir. 1994)).  When Hanner admitted to the facts alleged by entering his plea, he waived a claim that elements of the crime were not proven.  He cannot now claim that his conviction violates due process because the State failed to prove the elements of attempted carjacking.  Accordingly, Hanner cannot obtain relief on this claim.

**B.**

Hanner further alleges that his plea was involuntary because he was not informed of the elements of attempted carjacking.  Hanner asserts that, instead of telling him this information, Pingor merely told him that if he did not take the deal, he would receive thirty years in prison, that Pingor would not present a defense and would not represent Hanner if he did not want to accept a plea, and that Hanner had no chance to win at trial because he is a black man and the victim was a white woman.  Thus, he claims, he was coerced into taking the plea.[8]

Although Hanner's voluntary plea prevents him from asserting constitutional

---

[8]Hanner makes these specific factual allegations in Ground Three of the federal habeas petition. Ground Three contains assertions repetitive to those raised in Ground Two alleging that Pingor did not explain the charge or the elements of carjacking to him and should not have advised him to enter a plea because the offense never occurred. These allegations are considered within Ground Two.

violations that occurred prior to the entry of the plea, a challenge to the voluntariness of the plea itself may be raised.  *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

Aspects of Hanner's claim were raised in his motion to withdraw plea and motion for postconviction relief.  First, in his motion to withdraw plea, Hanner claimed that his plea was involuntary because he was not advised of the elements of attempted carjacking that must be proven.  At the hearing on this motion, Pingor testified that he was aware of the elements of attempted carjacking and that, in his opinion, the State could prove these elements.  (Doc. 11, Ex. A6, pp. 286-87.)  Pingor stated that he discussed the charge "in detail" with Hanner, that they talked about whether the State could prove the elements of attempted carjacking, and that Pingor expressed his opinion that Hanner would not win at trial.  (Id., pp. 272-73.)

Pingor testified that he discussed the victim's version of events "many times" with Hanner, and told Hanner that if a jury believed the victim, the facts would show attempted carjacking.  (Id., p. 287.)  Pingor responded affirmatively when asked by the Assistant State Attorney whether he "[went] over what [Hanner's] defense versus what the State's allegation, what we had to prove on attempted carjacking and what you thought the ultimate outcome would be."  (Id., p. 288.)  In addition, Pingor specified that he observed the victim testify at a motion to revoke bond hearing and believed her to be "an excellent witness."  (Id., p. 274.)  After this hearing, his evaluation of the case went from Hanner's having "a very slim chance of winning to having no chance of winning."  (Id.)

Pingor testified that Hanner wanted to present a defense of a drug deal gone wrong. (Id., p. 271.)  Pingor stated that after he discussed his opinion about the victim's testimony with Hanner, however, he thought Hanner "was starting to realize that he didn't have really much of a defense in this case, if any." (Id., p. 274-75.)  Pingor denied telling Hanner that he "didn't have a chance" because the victim was white and Hanner is black, but agreed that he "did probably tell him that that might affect his chances, yes." (Id., p. 291.)

Hanner testified that he told Pingor that day he did not want to take the plea.  (Id., p. 222.)  He testified that he did not understand the charge itself, and that he attempted to discuss the charges with Pingor but Pingor did not provide him any answers.  (Id., p. 225, 235, 252, 264-65.) Hanner also stated that Pingor said he was not prepared to go to trial, would not present any defense, and did not believe Hanner.  (Id., pp. 235, 257.)  He further testified that Pingor told him he would receive thirty years if he was found guilty at trial, and Pingor "made it sound" like he would definitely be found guilty at a trial.  (Id., p. 219.)  Hanner also testified that Pingor said the jury would not believe Hanner, a black man, over the victim, a white woman.  (Id., pp. 236, 256.)  He also stated that Pingor pressured him into taking the plea.  (Id., pp. 229-30.)

The state trial court denied Hanner's motion to withdraw plea.  In its order, the state court identified this portion of Hanner's claim, noting that he asserted in his motion that "he was not advised of the elements of the crime." (Ex. A9, p. 153.)  The court also noted that Pingor "told the Defendant that the State could prove its case." (Id., p. 154.)  The state court further found that Pingor's testimony was credible, and found that "given the totality of the circumstances the Defendant fails to establish just cause to withdraw the plea.  To the contrary, this Court finds that it is not believable that the Defendant was coerced into

entering his plea." (Id., p. 155.)  The state court concluded, "[f]ounded on the testimony presented at the hearing and the transcript of the plea colloquy this Court finds that the Defendant's plea was knowingly and voluntarily entered."  (Id.)[9]

A credibility finding is a question of fact.  *Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir. 1985) ("Factual issues include . . . credibility determinations."). The state court's determination that counsel's testimony was credible is presumed correct.  *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."), *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995).  Pingor's testimony reflects that he did discuss with Hanner the charge, the elements the State was required to prove, and the strength of the evidence.  His testimony further indicates that he was experienced attorney[10] who addressed with Hanner his assessment of Hanner's chances at a trial.  Accordingly, the state court rejected Hanner's assertion that he did not understand the charges and was coerced into entering his plea.

---

[9]Hanner raised a similar claim in ground seven his motion for postconviction relief, alleging that the plea was involuntary because he was not given notice of the charge.  Interpreting the claim as one alleging an error in the charging document, the court rejected this claim as procedurally barred from postconviction review. (Doc. 11, Ex. C4, p. 75.)  The rejection for failure to properly present the claim under established state procedure results in a procedural default of the claim.  *Harris v. Reed*, 489 U.S. 255, 262 (1989).  Hanner does not establish the applicability of an exception to overcome the default.  Furthermore, not withstanding the default, and even if Hanner's habeas claim is construed as encompassing the underlying assertion raised in ground seven of his postconviction motion that his plea was involuntary, it is meritless for the reasons addressed in Ground Two.

[10] Pingor testified he had been an attorney for approximately twenty-two years.  (Doc. 11, Ex. A6, p. 268.)

While he alleges that Pingor's testimony was not credible simply because Pingor did not recall all events or conversations with specificity, Hanner does not establish that the state trial court's credibility finding was erroneous.  Nor does Hanner show that the state court's rejection of his involuntary plea claim was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.[11]

Finally, to the extent Hanner alleges that Pingor was ineffective under *Strickland* for failing to investigate the elements of attempted carjacking, he is not entitled to relief.  The entry of a plea does not bar review of a claim of ineffective assistance of counsel prior to the entry of the plea to extent the alleged ineffectiveness bears upon the voluntariness of the plea itself.  *See Hill v. Lockhart*, 474 U.S. at 53-59; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged . . . [h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was not within the range of competent performance.).

The state court denied this ground when Hanner raised it in his postconviction motion:

> Defendant alleges that trial counsel was ineffective for failing to

---

[11]To the extent Hanner's claim can be construed to raise the claim presented in ground four of the postconviction motion, in which Hanner argued Pingor was ineffective for coercing him into taking the plea due to alleged racial bias, he is not entitled to relief.  The state court rejected this claim, finding that Hanner failed to show deficient performance because "given counsel's substantial experience as an attorney, he would have had a realistic basis for his assessment regarding the effect of the racial differences on Defendant's chances at trial."  (Doc. 11, Ex. C4, p. 71.)  The state court also found that Hanner failed to show prejudice because he did not establish a reasonable probability that, absent counsel's alleged deficiency, he would have gone to trial and potentially doubled his sentence to thirty years upon conviction.  (Id., pp. 71-72.)  The state court's determination was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.

explain the essential elements required for Defendant to be convicted of the crime charged, and that this failure rendered the plea involuntary. Defendant states that counsel never informed him of the "element of requisite intent and how the elements required to prove the charged offense do not match the alleged allegations made by the alleged victim." He states that the elements of Fla. Stat. § 812.133/777.04 (attempted carjacking) are the same as the elements of Fla. Stat. § 813.12(1)/777.04 (attempted robbery) except that the intent required for attempted carjacking is that of depriving the victim of a motor vehicle whereas the intent required for attempted robbery is that of depriving the victim of "property" (such as "money, keys, and purse"). Defendant states that the only attempt that could be proven was the intent to deprive the victim of property, not a motor vehicle; thus, he would have proceeded to trial knowing that "the only conviction that could possibly be obtained would be one for attempted robbery, the lesser included offense to attempted carjacking."

The Court finds that since, as Defendant states, the victim alleged that he intended to deprive her of her keys, the jury could reasonably have inferred that Defendant was attempting to deprive the victim of her motor vehicle; thus, the State would reasonably have been able to prove all the elements of the offense of attempted carjacking under these facts. See Price v. State, 816 So.2d 738, 741 (Fla. 3d DCA 2002) (holding that taking a victim's keys satisfies the "taking" element of the carjacking statute even if the perpetrator does not actually drive away with the vehicle). During her deposition, the victim, Deborah Dean, indicated that Defendant attempted to deprive her of her keys in the presence of her vehicle. Therefore, counsel cannot be deemed deficient under these circumstances even if he did not explain to Defendant the difference in the elements between attempted carjacking and attempted robbery because such a distinction, under these facts, would not have reasonably made a difference at trial. Because counsel cannot be deemed deficient, Defendant has not made a sufficient showing under [the] first prong of Strickland. Defendant's motion is denied on this ground.

(Doc. 11, Ex. C4, pp. 72-73) (court's record citations omitted).

The state court found that counsel was not deficient on the basis of state law supporting the conclusion that attempting to take car keys is sufficient to establish attempted carjacking. A federal habeas court must defer to the state court's interpretation of its own laws. See Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."); Will v. Sec'y for Dep't of Corr., 278 Fed. App'x 902, 908

(11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

As Hanner fails to show deficient conduct by counsel, he cannot establish a basis upon which to find the plea was involuntary due to counsel's performance.   He does not demonstrate that the state court's rejection of his postconviction claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.   Hanner is not entitled to relief on Ground Two.

**Ground Three**

Hanner asserts that Pingor was ineffective "prior to and during plea proceedings" for failing to present the court with Hanner's history of mental health issues and treatment and did not seek to have Hanner evaluated for competency despite being aware of his history and recent commitments to mental health facilities.  (Doc. 1, p. 10.)

Hanner raised this claim in ground two of his postconviction motion.  In rejecting this claim, the state court consolidated ground two and ground one, in which Hanner alleged that counsel was ineffective for not investigating an insanity defense.[12]   As relevant to Ground Three of the federal habeas petition, the state court found:

> The record . . . reflects that, during testimony at an evidentiary hearing held on April 15, 2011 concerning Defendant's November 11, 2010 [sic] Motion to Withdraw Plea, defense counsel Brian Pingor stated that he was not sure whether Defendant ever told him he had mental health issues.

---

[12] Hanner's federal habeas petition does not raise any claim concerning an insanity defense.

Additionally, Mr. Pingor stated that "there was never an issue of competency in [his] mind, not even the slightest.["]  He further stated that he had "quite a bit of contact" with the defendant during the time leading up to the plea.  The Court found Mr. Pingor's testimony at that hearing to be credible.

The Court finds that Defendant has not established that counsel was deficient for failing to investigate Defendant's mental health.  The test for whether counsel rendered deficient representation involves evaluating all of the circumstances from the attorney's perspective at the time.  Downs, 453 So. 2d at 1106-07.  At the time, Mr. Pingor stated that he had significant contact with the defendant, but that he was not sure if Defendant had ever mentioned his mental health issues.  He also stated that competency was never an issue in his mind.  Accordingly, it follows that, if Defendant's mental health issues had been apparent, his competency would have come into question either by counsel or by the Court.
. . .

As to Ground Two, Defendant alleges that counsel was ineffective for failing to seek a competency evaluation after learning of Defendant's mental health problems.  Defendant additionally alleges that he informed counsel that he was not being administered his prescribed medications and that counsel did not engage in an investigation as to Defendant's competency.  He states that counsel should have moved for review of his mental health records, informed the trial court of the potential competency issues, and requested a competency evaluation.

When a defendant alleges that counsel was ineffective for failing to investigate competency, in order to sufficiently allege prejudice under the second prong of Strickland, there must be at least a reasonable probability that the defendant would have been found incompetent.  Thompson v. State, 88 So.3d 312, 318 (Fla. 4th DCA 2012).  However, this claim, like the claim in Ground One, is refuted by the record by considering only the first prong of the Strickland analysis.  As noted above, during the hearing on Defendant's Motion to Withdraw Plea, Mr. Pingor testified that there was never an issue of competency in his mind.  Following that hearing, the Court found Mr. Pingor's testimony at the hearing to be credible.  The Court therefore finds that, considering the circumstances at the time of plea as is required by Downs, it was not reasonable to expect counsel to investigate competency.  Ground Two of Defendant's motion is . . . denied.

(Doc.11, Ex. C4, pp. 69-70) (court's record citations omitted).

The record supports the state court's finding that counsel did not provide ineffective assistance because he had no grounds upon which to believe that a competency evaluation was warranted.  Under Florida law, a competency evaluation is required when

the attorney has "reasonable ground to believe that the defendant is not mentally competent to proceed." Fla. R. Crim. P. 3.210(b).  At the evidentiary hearing on Hanner's motion to withdraw plea, Pingor expressed some uncertainty whether Hanner may have had some mental health issues prior to entering the plea, or whether Hanner asked for a psychiatric evaluation.  (Doc. 11, Ex. A6, p. 293.)  However, Pingor testified  that he had more contact with Hanner than with most clients because Hanner was out on bond, yet he never believed Hanner's competency to be an issue.  (Id., pp. 284.)  Pingor further denied that Hanner ever indicated difficulty understanding the court system or what was happening.  (Id., p. 296.)

The trial court found Pingor's testimony to be credible in its order denying Hanner's motion to withdraw plea.  The postconviction court relied upon this credibility finding in rejecting Hanner's claim of ineffective assistance of counsel.  Hanner presents no evidence to overcome the presumption that this finding was correct.  Accordingly, because Hanner does not demonstrate that counsel made an unreasonable decision not to investigate competency further or to present information about Hanner's mental health to the court, he does not show deficient performance.

Furthermore, "[i]n order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)).  Hanner further fails to show that

he was prejudiced by counsel's performance under this standard.[13]

Hanner therefore does not show that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Ground Three warrants no relief.

**Ground Four**

When Hanner filed a *pro se* motion to withdraw plea after sentencing, the state court appointed Mary Jennifer Arena as conflict-free counsel.[14]   Hanner claims that Arena provided ineffective assistance because she failed to amend the motion prior to the hearing to include information concerning Hanner's mental health.  He claims he informed Arena of his mental health history and asked her to investigate and review his mental health records.  Hanner further alleges that, had Arena amended the motion to include mental health grounds, there is a reasonable probability that the motion would have been granted.

During the hearing on Hanner's motion to withdraw plea, Arena called Rick Brennan, administrative nursing supervisor with the Pinellas County Sheriff's Office.  When Arena attempted to question Brennan about Hanner's medication, the State objected because the motion to withdraw plea made no mention of medication.  (Doc. 11, Ex. A6, p. 202).

---

[13]In his memorandum of law, Hanner states that counsel "failed to preserve the record on any of Petitioner's competency claims." (Doc. 2, p. 17.) To the extent Hanner attempts to raise an independent claim of ineffective assistance of counsel for failure to preserve the record for appeal, it is unexhausted.  Hanner did not raise this claim in his postconviction motion.  (Doc. 11, Exs. C1, C3.) He cannot return to state court to file a successive postconviction motion.  Fla. R. Crim. P. 3.850(h).  The claim is therefore procedurally defaulted. *Smith*, *Smith*, 256 F.3d at 1138.   Hanner does not establish the applicability of an exception to the default.  Notwithstanding, the claim is meritless because Hanner cannot demonstrate prejudice at the trial court level.  *See Strickland*, 466 U.S. at 696 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.").

[14] In Florida, "[a] motion to withdraw plea is a critical stage of the proceedings at which a defendant is entitled . . . to have counsel represent him."  *Krautheim v. State*, 38 So.3d 802, 804 (Fla. 2d DCA 2010).  Furthermore, "once it becomes clear that a defendant and his counsel are in an adversarial relationship with respect to the defendant's entry of his plea, the defendant is entitled to the appointment of conflict-free counsel to represent him and to assist him with respect to his motion to withdraw plea."  *Id.* at 805.

Rejecting Arena's argument that the overall claim of involuntary plea encompassed the issue of Hanner's mental health, the state court told her it was "not going to allow [her] to use a general pleading like that to go into mental state." (Id., p. 203.)

Nevertheless, some testimony about Hanner's mental state was presented during the evidentiary hearing. In addition to Pingor's testimony previously discussed, Hanner testified that he sought a furlough partly because of his mental health issues; that he had received mental health services while incarcerated and not incarcerated; and that he was not "receiving anything" on the date he entered the plea but ultimately received that medication. (Id., pp. 230-31.) Hanner also stated that he asked Pingor for a psychiatric evaluation but that Pingor did not obtain one. (Id., pp. 228, 231, 251.) Hanner further testified that he did not voice his confusion over the terms of his sentence when it was pronounced because he was in shock and did not know what was happening due to his lack of medication that day. (Id., p. 234.) Similarly, he testified that he did not complain about the denial of furlough at the time because he was not "totally aware" of many things that occurred in court because he "was not in [his] right frame of mind." (Id., p. 258.)

The state postconviction court rejected Hanner's claim:

Defendant states that he asked counsel to adopt and amend his *pro se* Motion to Withdraw Plea to "include the mental health grounds as well as trial counsel's error to inform the judge about his client's mental health history." . . .
 The Court does not find this argument persuasive in light of the same information from the record the led to its findings under Grounds One and Two. Although the Court indicated that it would not consider mental health issues during the hearing on the Motion to Withdraw Plea, the Court did allow some testimony related to Defendant's mental health and competency. During the hearing, trial counsel Brian Pingor testified that he was not sure whether Defendant ever told him he had mental health issues. He also testified that "there was never an issue of competency in [his] mind, not even the slightest," despite having substantial contact with Defendant during the

time leading up to the plea.  The Court found Mr. Pingor's testimony at that hearing to be credible.  Therefore, Defendant has not met the burden of showing that there is a reasonable probability that the Motion to Withdraw Plea would have been granted on the mental health grounds.  Defendant's motion is denied as to Ground Six.

(Doc. 11, Ex. C4, pp. 9-10) (court's record citations omitted).

The record supports the state court's finding.  Preliminarily, as addressed, Hanner does not establish that he was incompetent to proceed at the time he entered his plea or that the trial court erred in finding credible Pingor's evidentiary hearing testimony.  He does not show that Arena was ineffective for not amending the motion to include mental health information.  Even if Arena did so, in light of the information before the trial court, Hanner shows no basis to conclude that his plea was involuntary due to incompetency or Pingor's alleged failure to raise his mental health issues.

Thus, the record supports the state court's finding that Hanner does not demonstrate a reasonable probability the trial court would have granted his motion to withdraw plea[15] had Arena amended it as he proposes.  Hanner therefore fails to show prejudice under *Strickland*.  The state court's rejection of Hanner's claim was not contrary to or an unreasonable application of clearly established federal law or based upon an unreasonable determination of the facts.  Hanner does not show entitlement to relief on Ground Four.

Accordingly, the Court ORDERS:

That Hanner's Section 2254 petition (Doc. 1) is DENIED.  The Clerk is directed to enter judgment against Hanner and to close this case.

## CERTIFICATE OF APPEALABILITY AND

---

[15] *See State v. Partlow*, 840 So.2d 1040, 1042 (Fla. 2003) ("[O]nce sentence has been imposed, to withdraw a plea a defendant must demonstrate a manifest injustice requiring correction.").

## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

IT IS FURTHER ORDERED that Hanner is not entitled to a certificate of appealability (COA).   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA.   *Id.*   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   *Id.* at § 2253(c)(2).   To make such a showing, Hanner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).   Hanner has not made the requisite showing in these circumstances.

Finally, because Hanner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on October 5, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Kevin D. Hanner
Counsel of Record